IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALAN COYNE, JAMES MORIARITY, SCOTT SMITH, CHARLES STEELE, RON STEWART, MICHAEL COVEY, RICHARD HOLM, and CHET SZYMECKI, | ) ) ) ) ) |
| Plaintiffs, | ) Case No. 09 C 758 |
| v. | ) ) Judge Virginia M. Kendall |
| STRATEGIC BUSINESS PARTNERS, LLC, RONALD BRIDGES, DANIEL HOSTETLER, and CHARLES ORABUTT, | ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiffs Alan Coyne, James Moriarity, Scott Smith, Charles Steele, Ron Stewart, Michael Covey, Richard Holm, and Chet Szymecki (collectively "Plaintiffs") filed suit against Defendants Strategic Business Partners, LLC ("SBP"), Ronald Bridges ("Bridges"), Daniel Hostetler ("Hostetler"), and Charles Orabutt ("Orabutt") (collectively "Defendants"). Plaintiffs seek unpaid wages and overtime compensation from Defendants under the Fair Labor Standards Act, Illinois Minimum Wage Act, and Illinois Wage Payment and Collection Act. Defendants SBP, Hostetler, and Orabutt move for summary judgment, claiming that Plaintiffs signed an acknowledgment with SBP's payroll administrator, Strategic Outsourcing, Inc. ("SOI"), agreeing to submit all wage disputes to arbitration instead of pursuing litigation in federal court. For the following reasons, the Court denies Defendants' Motion for Summary Judgment.

**STATEMENT OF FACTS**[1]

**I.       Background**

The Plaintiffs are former employees of SBP, a consulting firm.  (Def. Resp. Pl. Add. Facts ¶ 1.)  From about May 2008 until November 2008, SBP hired SOI to administer its payroll.  (Def. Resp. Pl. Add. Facts ¶¶ 2, 6.)  Specifically, SBP paid Plaintiffs for work performed, but SOI acted as an intermediary by using payment information submitted by Kathleen Rucker ("Rucker"), SBP's administrative manager, to cut checks or direct deposit wages to Plaintiffs.  (Def. Resp. Pl. Add. Facts ¶ 2; Rucker Depo. 31:15-32:7.)

The SOI Handbook, which SOI distributed to Plaintiffs soon after being hired in May 2008, explained the nature of SOI's services:

> Welcome to Strategic Outsourcing Inc.!  The business for which you perform services (your Worksite) has entered into a relationship with us (or one of our subsidiaries or affiliates, for convenience "SOI") because it cares about the people who make the business work.  SOI is a leading, national company, and we are proud to be providing services to your Worksite.  As part of our relationship with your Worksite, once you have properly filled out the required documents and your Worksite has submitted the necessary materials to us, you will be paid on SOI's payroll (technically you are considered an "Assigned Employee"), and you may be eligible for certain benefits.

(Pl. 56.1 Resp. Section C ¶ 9.)  One of these "necessary materials" was an acknowledgment form ("SOI Acknowledgment") containing a provision requiring arbitration of wage disputes.  (Pl. 56.1 Resp. Section A ¶ 3.)

**II.      Plaintiffs Signed SBP Contract and SOI Acknowledgment**

---

[1] Throughout this Opinion, the Court refers to the Parties' Local Rule 56.1 Statements of Undisputed Material Facts as follows: citations to Plaintiffs' Response to Defendants' Statements of Material Fact have been abbreviated to "Pl. 56.1 Resp. ¶ __."; and citations to Defendants' Response to Plaintiffs' Statement of Additional Facts have been abbreviated to "Def. Resp. Pl. Add. Facts ¶ __."

Newly hired SBP employees would sign and return a contract with SBP outlining the details of their employment ("SBP Contract"). SBP employees, many of whom already had the SBP Contract signed and on file, also signed the SOI Acknowledgment shortly after SBP hired SOI in May 2008.

Plaintiffs signed both the SBP Contract and the SOI Acknowledgment. First, SBP hired Alan Coyne on May 19, 2008. (Def. Resp. Pl. Add. Facts ¶ 8.) On that day, Coyne signed the SBP Contract. (Def. Resp. Pl. Add. Facts ¶ 8.) A few days earlier, on May 15, 2008, he had signed the SOI Acknowledgment. (Def. Resp. Pl. Add. Facts ¶ 8; Pl. 56.1 Resp. Section B ¶ 1.) Second, SBP hired James Moriarity on March 10, 2008. (Def. Resp. Pl. Add. Facts ¶ 9.) Moriarity signed the SBP Contract on March 5, 2008, and the SOI Acknowledgment on May 14, 2008. (Def. Resp. Pl. Add. Facts ¶ 9.) Third, SBP hired Scott Smith on May 19, 2008. (Def. Resp. Pl. Add. Facts ¶ 10.) Smith signed an Executive Analyst Compensation Program with SBP on May 22, 2008, and the SOI Acknowledgment on May 19, 2008. (Def. Resp. Pl. Add. Facts ¶ 10.) Fourth, SBP hired Charles Steele on May 30, 2008. (Def. Resp. Pl. Add. Facts ¶ 11.) Steele signed the SBP Contract on May 30, 2008, and the SOI Acknowledgment on May 30, 2008. (Def. Resp. Pl. Add. Facts ¶ 11; Pl. 56.1 Resp. Section B ¶ 4.) Fifth, SBP hired Ron Stewart on January 30, 2006. (Def. Resp. Pl. Add. Facts ¶ 12.) He signed the SBP Contract on March 3, 2008, and the SOI Acknowledgment on May 13, 2008. (Def. Resp. Pl. Add. Facts ¶ 12; Pl. 56.1 Resp. Section B ¶ 5.).) Sixth, SBP hired Michael Covey on December 1, 2003. (Def. Resp. Pl. Add. Facts ¶ 13.) He signed the SBP Contract on March 3, 2008, and the SOI Acknowledgment on May 14, 2008. (Def. Resp. Pl. Add. Facts ¶ 13; Pl. 56.1 Resp. Section B ¶ 6.) Seventh, SBP hired Richard Holm on March 17, 2008. (Def. Resp. Pl. Add. Facts ¶ 14.) Holm signed the SBP Contract on March 17, 2008, and the SOI

Acknowledgment on May 14, 2008. (Def. Resp. Pl. Add. Facts ¶ 14; Pl. 56.1 Resp. Section B ¶ 7.) Finally, SBP hired Chet Szymecki on May 31, 2008. (Def. Resp. Pl. Add. Facts ¶ 15.) He signed the SBP Contract on May 30, 2008 and the SOI Acknowledgment on May 31, 2008. (Pl. 56.1 Resp. Section B ¶ 7.)

### III. SBP Contract

SBP employees and a company officer signed the SBP Contract.[2] (Def. Resp. Pl. Add. Facts ¶ 16.) SOI was not a party to the SBP Contract; in fact, it did not even mention SOI. (Def. Resp. Pl. Add. Facts ¶ 16.) Under the terms of the SBP Contract, modification or waiver was allowed in only limited circumstances:

> Entire Agreement: Waivers and Amendments – This employment Agreement sets forth the entire agreement between the parties with respect to the terms and conditions of the associate's employment and any and all matters related thereto, and any and all prior agreements with respect to, whether oral or written, are superseded hereby.
>
> Nothing in this Employment Agreement nor any terms or conditions hereof, including without limitation, the terms and conditions of the paragraph, may be waived or modified in whole or part as against the Company or the associate, as the case may be, *except by written instrument signed by an authorized officer of the Company or by the associate, as the case may be, expressly stating that it is intended to operate as a waiver or modification of the Employment Agreement*, and any such written waiver by either party of a breach of any provision of the Employment agreement shall not operate or be construed as a waiver of any subsequent breach hereof.

(Def. Resp. Pl. Add. Facts ¶ 18.) (emphasis added). Rucker and Orabutt, SBP's President and CEO, are aware of no modifications to this contract. Moreover, the SBP Contract further stated that "[t]he associate [each Plaintiff] hereby submits to the jurisdiction and venue of the courts of the State of

---

[2] The Court denies Defendant's objection to the relevancy of this fact. Defendant also does not offer evidence controverting this fact so it is deemed admitted.

4

Illinois and the United States District Court for the District of Illinois." (Def. Resp. Pl. Add. Facts ¶ 19.)

**IV.     SOI Acknowledgment**

After SBP hired SOI in early May 2008, Plaintiffs would become eligible to receive their paycheck from SOI after filling out, among other documents, the SOI Acknowledgment.[3] (Pl. 56.1 Resp. Section A ¶¶ 1, 2.) By completing this document, Plaintiffs became "assigned employees" of SOI. (Pl. 56.1 Resp. Section A ¶ 2.) The document consisted of three sections: the first was employee background information filled out by the employee, the second was payroll data filled out by Rucker, and the third was an "Acknowledgment" signed and dated by each employee. (Pl. 56.1 Resp. Section A ¶¶ 3, 4.) All of the Plaintiffs in this case signed and returned the two-page form, including the "Acknowledgment." (Pl. 56.1 Resp. Section A ¶ 4.) Rucker signed the first page below the section dealing with employee payroll data, but not the second page containing the acknowledgment; further, Rucker had no authority to bind SBP. (Def. Resp. Pl. Add. Facts ¶ 4.)

The provision of the SOI Acknowledgment dealing with arbitration states:

> *I and SOI mutually agree* that any legal dispute involving SOI, Company [SBP], or any benefit plan, insurer, employee, officer or director of SOI or Company arising from or relating to my employment, wages, leave, employee benefits, application for employment, or termination from employment *will be resolved exclusively through binding arbitration* before a neutral arbitrator heard in the capital or largest city of the state in which I work or another mutually agreed location. The arbitrator will be appointed according to the rules of a neutral, mutually agreeable, commercially reasonable arbitration service, have the authority to grant the same remedies that would be available in a court of law (and no more), and be bound by the same rules or evidence as a federal court. The arbitrator will resolve the dispute solely upon the law applicable to the claims, evidence adduced, and defenses raised, granting relief on no other basis, and may grant summary disposition or disposition on the

---

[3] Plaintiffs dispute this fact because Defendants did not produce a copy of the agreement between SBP and SOI. The Court overrules this objection. In accordance with Local Rule 56.1, Defendants cite to Rucker's affidavit to support when the SBP and SOI contractual relationship began and SOI's responsibilities under the agreement.

5

pleadings. The arbitrator will render a reasoned written decision, and if an applicable statute requires fees or costs to be shifted the arbitrator can enforce such requirements. If a matter is heard in court and not arbitration for any reasons, I and SOI mutually waive any right to a jury trial. Nothing herein prohibits me from complaining to government agencies or cooperating with their investigations as authorized by law. No failure to strictly enforce this agreement to arbitrate will constitute a waiver or create any future waivers and no-one other than counsel for SOI may waive this agreement for SOI and then only in writing. This agreement to arbitrate is enforceable as a contract under the Federal Arbitration Act and any other laws validating arbitration agreements. If any part of it is invalid or unenforceable for any reason, the remainder of this agreement to arbitrate will still be enforceable.

(Pl. 56.1 Resp. Section A ¶ 7.) (emphasis added).[4] The SOI Acknowledgment also limits SOI's liability:

> SOI is not responsible for any obligation Company [SBP] has to me [Plaintiffs] such as promises or contracts regarding length or terms of my employment, my pay or other consideration, or benefits offered by Company. If Company breaches a promise or contract, or if Company fails to pay SOI all monies due under its agreement with SOI, in no event will SOI be required to pay more than the minimum wage required by law while the agreement with Company was in force. Any obligations of SOI cease when the agreement with Company terminates.

(Def. Resp. Pl. Add. Facts ¶ 34.)

Neither Rucker nor any SBP officer ever signed the SOI Acknowledgment.[5] (Def. Resp. Pl. Add. Facts ¶¶ 24, 27, 28.) And in creating and circulating to Plaintiffs the SOI Acknowledgment, SBP never approved or provided advice about its contents; Rucker merely received the SOI

---

[4] Plaintiffs dispute this fact because Defendants did not cite to a specific piece of evidence. Defendants attached multiple copies of the SOI Acknowledgment as exhibits to their 56.1 statements and Plaintiffs Exhibit 20 is the "SOI Acknowledgment." Because no relevant basis exists to exclude the wording of the SOI Acknowledgment, the Court will consider it.

[5] The Court denies Defendants' relevancy objection. Whether SBP prepared the SOI Acknowledgment, and is a party bound by its terms, is material to this case.

Acknowledgment from SOI and obtained the Plaintiffs' signatures.[6] (Pl. 56.1 Resp. Section A ¶ 5.; Rucker Aff. ¶¶ 5, 8.)

Rucker, the SBP employee familiar with personnel issues, was not aware of any documents that required Plaintiffs to arbitrate any claims, nor did she know of any previous instances where SBP employees were bound to arbitration. (Def. Resp. Pl. Add. Facts ¶¶ 35, 36.)[7] Finally, the text of the SOI Acknowledgment gives no indication that it is intended to waive or modify any provision in the SBP Contract. (Def. Resp. Pl. Add. Facts ¶¶ 30, 31.)[8]

## STANDARD OF REVIEW

Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine issue of material fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *See Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the Court will "limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' [Local Rule 56.1] statement." *Bordelon v. Chicago*

---

[6] Plaintiffs dispute this fact because SBP does not cite to a specific piece of evidence. Technically, Plaintiffs are correct. But in the Court's discretion, because this fact was readily verifiable through Rucker's affidavit, the fact will remain.

[7] Defendants filed an "Amended Reply" to Plaintiffs' Response to Defendants' 56.1 Statements. In essence, this reply attempts to point out the inadequacy of Plaintiffs' Response. Local Rule 56.1, however, does not allow a party to submit argument on the insufficiency of the opposing party's response to 56.1 statements. Alternatively, the Amended Reply, which often included multiple paragraphs alluding to the deficiencies in Plaintiffs' Response, is far beyond being a "concise response" as Rule 56.1 requires. The Court therefore strikes Defendants' Amended Reply as impermissible.

[8] Defendants' relevancy objection to ¶ 30 and ¶ 31 is misplaced. In fact, the SBP Contract requires any modification to be in writing and must expressly state the intent to modify the contract. Defendant offers no evidence to controvert the statement that no documents exist that modify the SBP Contract, so the Court treats this fact as admitted.

7

*Sch. Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000). Where a proposed statement of fact is supported by the record and not adequately rebutted, the court will accept that statement as true for purposes of summary judgment. An adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial is inadequate. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("'Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.'").

## **DISCUSSION**

The issue before the Court is whether SBP is a party to the SOI Acknowledgment and therefore able to enforce its arbitration provision. Where, as here, the Court must determine the validity of the arbitration contract, Illinois principles of contract law guide the analysis.[9] *Continental Cas. Co. v. American Nat. Ins. Co.*, 417 F.3d 727, 730 (7th Cir. 2005); *Gibson v. Neighborhood Health Clinics, Inc.*, 121 F.3d 1126, 1130 (7th Cir. 1997) ("An agreement to arbitrate is treated like any other contract."). Under Illinois law, if the arbitration agreement is a valid contract and the claims at issue fall within the agreement, then the court has "no discretion but to compel arbitration." *Hubbert v. Dell Corp.*, 835 N.E.2d 113, 121 (Ill. App. Ct. 2005). The party seeking arbitration, SBP, has the burden of proving these two elements. *Id.*

"In Illinois, an offer, an acceptance and consideration are the basic ingredients of a contract." *Melena v. Anheuser-Busch, Inc.*, 847 N.E.2d 99, 109 (Ill. 2006). While these elements may be met

---

[9] The SBP Contract between SBP and Plaintiffs states that "the laws of the State of Illinois and United States of America" will apply to construing and enforcing the contract. (Pl. Exh. 19 at 11.) The SOI Acknowledgment contains no choice of law provision, so Illinois law applies: "Where the parties have not identified a conflict" between applying the law of two different states, "the law of the forum state" applies. *See Continental Cas. Co.*, 417 F.3d at 734 n.8.

8

as between SOI, the creator of the SOI Acknowledgment, and Plaintiffs, who signed the SOI Acknowledgment, that is not the issue before the Court because SOI is not a party in this lawsuit. Rather, the critical question is whether SBP is a party to the SOI Acknowledgment, and therefore able to enforce its provisions against Plaintiffs.

The undisputed facts fail to establish that SBP agreed to be bound by the SOI Acknowledgment. SBP maintains that signing the SOI Acknowledgment was necessary in order for Plaintiffs to remain employees of SBP. (R. 79, Mot. Summary Judgment 2.) But the text of the SOI Acknowledgment and SOI's unilateral creation of the agreement puts in question whether, from an objective perspective, SBP intended to be a party to arbitration.

First, no SBP officer ever signed the SOI Acknowledgment. (Def. Resp. Pl. Add. Facts ¶¶ 24, 27, 28.). Likewise, the unambiguous text of the SOI Acknowledgment defines the rights and obligations as between Plaintiffs and SOI, not between Plaintiffs and SBP. The provision on legal disputes states:

> *I and SOI mutually agree* that any legal dispute involving SOI, Company [SBP], or any benefit plan, insurer, employee, officer or director of SOI or Company arising from or relating to my employment, wages, leave, employee benefits, application for employment, or termination from employment *will be resolved exclusively through binding arbitration* before a neutral arbitrator heard in the capital or largest city of the state in which I work or another mutually agreed location.

(Pl. 56.1 Resp. Section A ¶ 7.) (emphasis added). A straightforward reading of this provision indicates that only the Plaintiffs and SOI agreed to arbitration. SBP's explicit assent to resolve disputes through arbitration is noticeably absent from the text.

Naturally, the SOI Acknowledgment refers generically to "Company" in some provisions because SBP hired SOI to administer its payroll. "Company," however, is mentioned in isolated provisions to simply explain SOI's services for SBP; no reasonable interpretation of these references

9

can support finding that SBP actually assented to the agreement. Further, the fact that "Company" was never changed to "SBP" in the agreement provides additional evidence that SBP had no intent to be a party to the SOI Acknowledgment.

SOI's disclaimer of liability in the SOI Acknowledgment also jeopardizes its application to the present case. Under its terms, SOI is "not responsible for any obligation Company has to me [Plaintiffs] such as promises or contracts regarding length or terms of my employment, my pay or other consideration, or benefits offered by Company." (Def. Resp. Pl. Add. Facts ¶ 34.) Plaintiffs seek unpaid wages from SBP, which falls under this provision. This provision appears to exclude SOI, and therefore application of the SOI Acknowledgment, from this lawsuit, further illuminating that the undisputed facts do not support compelling arbitration.

Second, SBP contends that both SBP and SOI required Plaintiffs to sign the SOI Acknowledgment in order to continue their employment, but significant facts before the Court demonstrate that SOI unilaterally created the document containing the SOI Acknowledgment. On the first page of the document, Plaintiffs filled in their personal information in Section 1; Rucker filled out work-specific information, such as position, in Section 2 and usually signed the bottom of the page. (Pl. 56.1 Resp. Section A ¶¶ 3, 4.) Rucker, however, did not have authority to bind SBP. (Def. Resp. Pl. Add. Facts ¶ 4.) Beyond Rucker's administrative duties, there are no facts demonstrating SBP's involvement in the SOI Acknowledgment. For example, SBP never approved, reviewed, or provided advice about the contents of the SOI Acknowledgment; Rucker only received the document from SOI, obtained Plaintiffs' signatures, and passed the document back to SOI. (Pl. 56.1 Resp. Section A ¶ 5; Rucker Aff. ¶¶ 5, 8.) As a result, the undisputed facts do not establish that

10

SBP objectively manifested assent to the SOI Acknowledgment; without clearly being a party to that arbitration agreement, Plaintiffs are not bound to arbitration.

The remaining consideration is whether SOI's assent to the SOI Acknowledgment can be attributed to SBP under agency principles. Under Illinois law, a nonsignatory to an arbitration agreement can be bound through agency. *Curto v. Illini Manors, Inc.*, 940 N.E.2d 229, 233 (Ill. App. Ct. 2010). An agent with actual or apparent authority can bind the principal. Actual authority can be found where the actions of the principal toward the agent cause the agent to believe he has authority. *Id.*; *Hartshorn v. State Farm Ins. Co.*, 838 N..2d 211, 217 (Ill. App. Ct. 2005). And apparent authority exists where the "principal creates a reasonable impression to a third party that the agent has the authority to perform a given act." *Curto*, 940 N.E.2d at 235; *Crawford Sav. and Loan Ass'n v. Dvorak*, 352 N.E.2d 261, 264 (Ill. App. Ct. 1976).

Here, the briefs did not address the potential agency issue. As a result, the contractual agreement between SOI and SBP has not been presented to the Court. The facts that have emerged, however, do not clearly establish that SOI was SBP's agent. The same analysis from above is relevant here too. SBP had no oversight, communication, or collaboration with SOI in creating the SOI Acknowledgment, and this prevents a finding that it is undisputed that SOI signed the arbitration agreement as SBP's agent. The text of the SOI Acknowledgment itself also indicates that it was an undertaking solely between SOI and Plaintiffs. SBP therefore is not entitled to summary judgment on the basis that it is a party to the SOI Acknowledgment via agency principles.

**CONCLUSION AND ORDER**

For these reasons, the Court denies Defendants' Motion for Summary Judgment.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: March 14, 2011